UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| HEATHER WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 10-213-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Heather Waters and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Records Nos. 10,11] Waters argues that the Commissioner erred in finding that she was not disabled. More specifically, she claims that the Administrative Law Judge ("ALJ") failed to give proper weight to a number of sources and failed to adequately explain his decision. Waters moves the Court to award benefits in her favor or, in the alternative, to remand the case to the ALJ for further consideration.

The Commissioner, contends that the ALJ's decision is supported by substantial evidence and should be affirmed. Having reviewed the administrative record and considered the parties' arguments, the Court agrees with the position taken by the Commissioner. Accordingly, the Commissioner's motion for summary judgment will be granted, Waters' motion will be denied, and the case will be dismissed.

**I.**

On May 25, 2007, Waters filed an application for Supplemental Security Income ("SSI"). She alleged an onset date of October 31, 2006. [Tr., p. 92] Waters' claims were initially denied and upon reconsideration. [Tr., pp. 70–73, 82–84] Waters was given an administrative hearing before ALJ Don Paris on November 5, 2009. [Tr., pp. 22–47] Waters appeared at the hearing along with her attorney, Gail Bostress, and vocational expert ("VE") Betty Hale. [Tr., p. 22] On November 25, 2009, the ALJ handed down his decision denying Waters' claims. [Tr., pp. 11–18] On August 3, 2010, the Appeals Council denied Waters' request for review. [Tr., pp. 1–3] Waters filed this action on September 30, 2010, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**II.**

At the time of the administrative hearing, Waters was twenty years old. [Tr., p. 26] She has an eighth-grade education. [Tr., p. 121] The ALJ found that Waters had past relevant work as a cashier and as a pricer/sorter. [Tr., p. 17] The ALJ also found that Waters suffered from the following severe impairments: seizure disorder and polysubstance abuse with possible depression. [Tr., p. 13]

As evidence of her disability, Waters provided her own testimony; the testimony of her former supervisor at Goodwill, Connie Olden; and reports from a number of doctors. [Tr., pp. 24–41; 157–73; 201–23] She provided reports from intermittent hospital and doctors' visits, her treatment notes from Graham Chiropractic, and a single-page note from S. Mayel, M.D. [Tr., pp. 157–73; 201–23] The ALJ also had available an assessment from Timothy Gregg, M.D., a

state consultive examiner. [Tr. p. 14] Based on this evidence, the ALJ concluded that Norris had a Residual Functional Capacity ("RFC"):

> to do basic work activities . . . [except] she should never climb ladders/ropes/scaffolds; avoid concentrated exposure to extreme heat and humidity; avoid all exposure to hazards such as unprotected heights and dangerous machinery; never drive a commercial vehicle or operate any movable equipment, such as forklifts and other work vehicles.

[Tr., p. 15]

The VE testified that, in view of this RFC, Waters was able to return to her past relevant work as a cashier. [Tr., pp. 17, 44] Additionally, the VE testified that, with the same limitations, there were other jobs Waters could perform that were available in both the regional and national economies. [Tr., pp. 17, 44] After considering this testimony, the ALJ concluded that Waters was not disabled within the meaning of the Social Security Act. [Tr., p. 18 (citing 20 C.F.R. § 416.920(g))]

### III.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4)). If the claimant satisfies the first four steps of the process, the burden

shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the Court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they apply the proper legal standard and are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

Waters argues that the ALJ erred in six ways. She contends that the ALJ: (i) disregarded lay witness testimony by her former supervisor; (ii) failed to provide sufficient weight to the opinion of her chiropractor; (iii) erred in finding that her back pain was not a severe impairment; (iv) did not give proper weight to the conclusions of Dr. Mayel; (v) failed to properly explain how he arrived at his RFC determination; and (vi) improperly disregarded the VE's response to

her attorney's questions. However, after a review of the record, the Court does not find any of Waters' arguments persuasive. The ALJ did not commit reversible error; his findings applied the proper legal standard and are supported by substantial evidence. Therefore, the Court will affirm the ALJ's decision.

### A. New Evidence

As a preliminary matter, Waters has submitted evidence to this Court which was not a part of the record before the ALJ. She submitted, as evidence of the quantity and severity of her seizures, a "seizure journal." [Record No. 10-1] Waters notes that her journal was submitted to the Appeals Council but did not become part of the administrative transcript. [Record No. 10, p. 2 n.1] The Sixth Circuit has held that "where an Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir. 1993)); *see also Bass*, 499 F.3d at 512–13 ("Only evidence in the record below can be considered when determining whether or not the ALJ's opinion was supported by substantial evidence.").

"[T]he only method to have new evidence considered is to ask for a sentence six remand under 42 U.S.C. § 405(g)." *Bass*, 499 F.3d at 513. Section 405(g) permits remand for new evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Waters has not made a sufficient showing on either prong. First, if, as

Waters claims, she had been keeping this journal since December 2005, there is no reason she could not have submitted the journal to the ALJ in her original proceeding. Second, Waters has not shown the evidence is material. "In order for the claimant to satisfy this burden of proof as to materiality, [she] must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). The ALJ found Waters was not credible as to the "persistence" of her symptoms. [Tr., p. 16] Thus, it is unlikely her personal account of the persistence of her seizures would have altered his conclusion. Waters has not explicitly asked for a remand under sentence six of § 405(g), but even if she had, she has failed to meet either of the two prongs necessary to justify such a remand. The new evidence Waters submitted, her "seizure journal," will not be considered in analyzing the ALJ's determination.

### B. Testimony of Connie Olding

Waters' first argument is that the ALJ "erroneously disregarded" the testimony of Connie Olding, Waters' co-worker and manager at the Goodwill. [Record No. 10, p. 7] Olding is, without question, a lay witness or "non-medical source." *See* 29 C.F.R. § 416.913. Waters argues that because the ALJ did not mention Olding's testimony in his written decision, he failed to properly consider it.

In *Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988), the Sixth Circuit explained that while an ALJ *should* explicitly consider lay witness testimony, the failure to do so is not reversible

error.  In *Higgs*, as in the present case, the Commissioner's opinion "state[d] that [he] 'considered the entire record . . . including the testimony at the hearing.'" *Id.* at 864. [*See* Tr., p. 13 ("After careful consideration of the entire record, the undersigned makes the following findings . . . ."); p. 15 ("After careful consideration of the entire record, the undersigned finds . . . .")]  The Sixth Circuit found in *Higgs* that "[t]he Council's lengthy discussion of the medical evidence ma[de] it clear that it did not credit any testimony at variance with the objective record." *Id.*  The same is true here.

ALJ Paris fully considered the medical evidence and found that it pointed to a conclusion opposite to what the lay witnesses testified.  While it would have been prudent for the ALJ to further discuss and provide reasons for the weight he gave the lay witness testimony, his careful consideration of the medical evidence implicitly provides his reasons for rejecting it. *See id.*; *cf. Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony *where . . . it is fully supported by the reports of the treating physicians*." (emphasis added)).  That the ALJ did not explicitly say rejected the lay testimony is not reversible error under the circumstances of this case. *See Higgs*, 880 F.2d 864.

       **C.**     **Opinion of Chiropractor and Finding that Back Pain Was Not Severe**

Waters' second argument is that the ALJ failed to afford sufficient weight to the opinion of her chiropractor.  [Record No. 10, p. 8]  However, no special or controlling weight is owed to a chiropractor's opinions.  The Sixth Circuit has explained that "under the current regulations, the ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion

based on all the evidence in the record since a chiropractor is not a medical source." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530–31 (6th Cir. 1997); *see also Peter v. Apfel*, No. 98-3410, 1998 U.S. App. LEXIS 30764, at *8 n.2 (6th Cir. Nov. 30, 1998) ("This Circuit and others have held that chiropractors' opinions are entitled to less weight because they are not medical doctors.").

The ALJ did not discuss the chiropractor's treatment records. However, this was not error for a number of reasons. First, as explained, the chiropractor's opinion would not be entitled to controlling weight. Second, the treatment records from Graham Chiropractic do not support Waters' claim that her back pain was of disabling severity. For example, on February 18, 2008 — Waters' second-to-last appointment — the notes indicate that Waters reported "no pain today." [Tr., p. 202] On that date, the chiropractor did not recommend that Waters return for a regular follow-up appointment, only that she was to return as needed. [*Id.*] On January 31, 2008, the notes indicate "low back pain rated at 2/10 on subjective scale. *Patient states that overall function is good.*" [Tr., p. 204 (emphasis added)] Although Waters claims that the ALJ failed to follow Social Security Ruling ("SSR") 06-3p, that ruling merely requires that the ALJ "generally should explain the weight given to opinions" from other sources "when such opinions may have an effect on the outcome of the case." SSR 06-3p, 2006 SSR LEXIS 5, at *15–16 (2006). Here, since the treatment records fail to establish a severe impairment and in fact are consistent with the ALJ's decision, he did not err by failing to discuss those records.

Along this same line, Waters also argues that the ALJ erred by not finding her back pain to be a severe impairment. [Record No. 10, p. 12] As previously discussed, the medical

evidence in the record supports the ALJ's finding. At best, Waters' records from Graham Chiropractic show that she experienced mild back pain and received treatment for her condition. They do not establish that her back pain significantly limited her ability to perform basic work activities. *See* 20 C.F.R. §§ 416.920(c), 416.921(a). Quite to the contrary, they indicate that her "overall function is good." [Tr., p. 204] "The mere diagnosis [of a condition], of course, says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863. Here, the ALJ's determination that Waters' back pain was not a severe impairment is supported by substantial evidence.[1]

### D. Dr. Mayel's Note

Waters also contends that the ALJ erred by failing to give controlling weight to the opinion of Dr. Mayel, whom Waters claims was her treating physician. Waters did not introduce any treatment notes or clinical findings of Dr. Mayel's. Instead, she submitted a one-page note that indicated Waters had "seizure disorder" and "depression" and concluded with the statement: "she is not able to work with her condition." [Tr., p. 223] Waters argues that this "opinion" should have been given controlling weight.

Waters accurately explains that "a treating doctor's opinion must be given 'controlling weight' if '*well supported*' *by objective evidence*." [Record No. 10, p. 13 (emphasis added)] The Sixth Circuit "has consistently stated that [the Commissioner] is not bound by the treating

---

1 Further, the Sixth Circuit has held that when the ALJ finds at least one severe impairment and proceeds with the sequential evaluation, he or she may consider all information available in making an RFC determination. Thus, there can be no reversible error for failing to find an additional impairment was severe. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.").

physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993). A one-page, three-sentence note without any supporting treatment records, test results, or other evidence is not "supported by sufficient clinical findings." *Id.* Moreover, the ALJ found that Dr. Mayel's opinion was not consistent with the medical evidence of record. [Tr., p. 16] Thus, it was not entitled to controlling weight and the ALJ did not err in choosing not to grant it such.

Further, Dr. Mayel's opinion that Waters cannot work is a conclusion that is ultimately reserved to the Commissioner. A claimant's RFC — what tasks he or she can or cannot perform — is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2); *see also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner."). The determination regarding what, if any, jobs the claimant can perform is also reserved to the Commissioner. *Id.* The ALJ need not "give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 416.927(e)(3). In other words, the fact that Dr. Mayel is a treating source entitles his opinion to no special weight when he makes conclusions on issues reserved to the Commissioner. The ALJ clearly considered Dr. Mayel's opinion and discussed his reason for rejecting it. [Tr., p. 16] His analysis applied the proper legal standard and was supported by substantial evidence, and therefore provides no basis to overturn his decision.

### E. Narrative Discussion

Waters next claims that the ALJ "erred in not meeting the requirements of SSR 96-8p (1996); which requires an ALJ to have a narrative discussion as to how he arrived at the RFC in a competitive work environment and not a structured work environment." [Record No. 10, p. 9] The substance of this argument is difficult to decipher, but it appears Waters is arguing that because her work at Goodwill involved accommodations (*i.e.*, extra breaks, rest periods, and adjusted schedule), the ALJ needed to provide additional discussion as to how she could function in a non-accommodated job.

The Social Security Ruling to which Waters cites, SSR 96-8p, requires the ALJ's RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996). "The adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." *Id.*; *see also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week").

In this case, the ALJ considered each of Waters' symptoms that was supported by the record. [Tr., p. 15 ("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the medical evidence.")] He discussed the limitations those symptoms would place on Waters' work. [Tr., p. 15–17] Ultimately, with the testimony of the VE, he concluded that there was work Waters could perform on a regular and continuing basis, even with her limitations. [Tr., p. 17] He did

not conclude that her symptoms would *per se* prevent her from working eight hours a day or five days a week. There is no evidence that the ALJ's understanding of the term "work" was any different than the definition expressed by SSR 96-8p. The ALJ did not err by failing to specifically mention that his understanding of "work" meant "eight hours a day" or "five days a week." He provided a narrative discussion of Waters' symptoms, their effect on her work, and how he reached those conclusions. Thus, the narrative he provided substantially complied with the requirements of SSR 96-8p.

F.   **VE Testimony**

At the hearing, the ALJ presented a hypothetical to the VE that included all the limitations he found supported by the record. [Tr., p. 43] After considering that hypothetical, the VE testified that there were jobs Waters could perform. [Tr., pp. 43–44] On cross-examination, Waters' counsel presented his own hypothetical to the VE, adding two limitations, and asked whether competitive jobs would be available including the additional limitations. [Tr., pp. 45–47] The VE testified that if the additional limitations proposed by Waters' counsel were included, an employee would not be able to find a competitive job. [Tr., p. 46] Waters argues that the ALJ committed error by not adopting the VE's conclusions.

As mentioned, the RFC is a determination reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2); *see also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner."). The Court has already concluded that the ALJ's RFC determination applied the proper legal standard and was supported by sufficient evidence. Thus, a VE's testimony about jobs that would be available

with a *different* RFC is not relevant. Waters' counsel could have included any number and variety of limitations in a hypothetical, and the VE would eventually have to say that no jobs existed with those limitations. An ALJ should not be bound to discuss or adopt testimony based on imaginary RFCs.

Waters, however, argues that the limitations her counsel presented were supported by her testimony. But the ALJ found Waters not to be credible. [Tr., p. 16] Credibility determinations by an ALJ are entitled to great deference. *See Williamson v. Sec'y of Health and Human Servs.*, 796 F.2d 146, 150 (6th Cir. 1986). Further, "[i]f the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ determined an RFC and presented it to the VE in a hypothetical. His decision not to consider testimony concerning jobs available for an altogether different RFC is not error.

## V.

Although Waters has established that she suffers from some medical impairments, she has not established that they sufficiently limit her work activities to warrant Supplemental Security Income. The ALJ did not err in giving little or no weight to lay witness Connie Olding or to the unsubstantiated note of Dr. Mayel. Neither did the ALJ err by not discussing chiropractic treatment notes that were consistent with his determination. Furthermore, the ALJ provided sufficient narrative reasons for his decision. Viewing the record as a whole, the ALJ's decision applied proper legal standards and is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Heather Waters' Motion for Summary Judgment [Record No. 10] is **DENIED**;

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**;

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 26th day of August, 2011.

Signed By:
*Danny C. Reeves* DCR
United States District Judge